**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Nationwide Insurance Company of America, | ) Civil Action No.: **4:14-273-BHH** |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Graham Keith Jackson, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| Graham Keith Jackson, | ) |
| | ) Civil Action No.: **4:14-945-BHH** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Nationwide Insurance Company of America, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## OPINION AND ORDER

This matter is before the Court on the Nationwide Insurance Company of America's

("Nationwide") motion for summary judgment.  (ECF No. 34.) Graham Keith Jackson

("Jackson") has responded.  Nationwide filed the 4:14-273 action in this Court and removed

the action in 4:13-945 from state court.  Both are declaratory judgment actions related to

underinsurance motorist coverage, which were consolidated on November 10, 2014, and

placed under the 4:14-273-BHH docket number.  (ECF No. 31.)

## BACKGROUND

On or about October 27, 2012, Jackson and his stepbrother, William C. "Christian"

Burris-Durham went hunting together.  (Burris-Durham Dep. at 7-8.)  When they returned

home, Burris-Durham parked the car, turned off the ignition, and removed the keys. *Id.* at

16-17.  He remained in the car for a moment texting someone while Jackson got out of the vehicle and shut the front passenger door.  *Id.* at 18-19. Jackson opened the rear door of the vehicle and retrieved his items.  (Jackson Dep. at 11-13.)  Jackson then turned away from the vehicle and put his bag on his back.  *Id.* at 11.  Jackson was walking away from the passenger side of the vehicle when Burris-Durham exited the vehicle, opened the rear driver side door, and reached into the vehicle to retrieve his gun.  *Id.*; (Burris-Durham Dep. at 19-20.)  As Burris-Durham grasped the gun, it discharged, and the bullet struck Jackson in the back of the leg. (Jackson Dep. at 12; Burris-Durham Dep. at 21.)

Jackson asserted a claim for his injuries. Nationwide settled the liability portion of the claim and brought this declaratory judgment action for a declaration as to coverage under its underinsured motorist (UIM) coverage. Jackson counterclaimed by means of his declaratory judgment action, C.A. No. Case No. 4:14-273.

## STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

2

56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the Jackson's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

This case does not require any certification to the South Carolina Supreme Court, as Jackson urges. It involves a very typical exercise in applying existing state court precedent to particular facts. Indeed, seldom does the Court have occasion to apply a case as directly controlling, as *Peagler v. USAA Ins. Co.*, 628 S.E.2d 475, 478 (S.C. 2006).

The Supreme Court of South Carolina has expressly held that accidental gunshot injuries, during loading and unloading of an insured vehicle, do not "arise out of the ownership, maintenance, or use" of the vehicle at issue. *Peagler v. USAA Ins. Co.*, 628 S.E.2d 475, 478 (S.C. 2006). In *Peagler*, a family was preparing to depart from home to go to work and school. *Id.* at 476. At the time of the accident, the decedent was in the vehicle with the door closed, her seatbelt buckled, and the engine running. *Id.* The insured was attempting to remove the shotgun from the vehicle so one of the children could get into the vehicle when the shotgun discharged. *Id.* The supreme court held that the vehicle was not an active accessory to the injury; it was merely the site of the injury. *Id.* at 481.

The Court agrees fairly readily that *Peagler* is controlling in this case.

The UIM portion of the policy at issue covers damages resulting from an accident "arising out of the ownership, maintenance, or use of the 'underinsured motor vehicle.'" (Complaint, Ex. A at U1.) This language tracks the language of South Carolina's financial responsibility statutes. *See Peagler*, 628 S.E.2d at 478 (quoting S.C. Code §§ 38-77-140, -30(10.5), -141, and -142). The policy language in this case is essentially identical to the language at issue in *Peagler*. *Id.*

As the parties recognize, South Carolina courts have developed a three-part test to determine whether an injury "arises out of the ownership, maintenance, or use" of the insured motor vehicle. *Id.* The party seeking coverage must show:

> (1) A causal connection exists between the vehicle and the injury;
>
> (2) No act of independent significance breaks the causal link between the vehicle and the injury; and
>
> (3) The vehicle was being used for transportation purposes at the time of the injury.

*Peagler*, 628 S.E.2d at 478. There is a separate three-part test for the determination

4

whether a causal connection exists to satisfy the first element.  A causal connection exists when:

> (a) The vehicle was an "active accessory" to the injury;
>
> (b) The vehicle was something less than the proximate cause but more than the mere site of the injury; and
>
> (c) The injury was foreseeably identifiable with the normal use of the vehicle.

*Id.* at 479.

Jackson cannot satisfy the first element that a causal connection exists between the vehicle and the injury.  Namely, there is no evidence that the car was any accessory to the injury, passive or active.  It is undisputed that the vehicle had been parked and the motor shut off when the accident occurred.  (Burris-Durham Dep. at 16-17.)  Jackson and Burris-Durham had both exited the vehicle.  *Id.* at 19-21; (Jackson Dep. at 11-13). Burris-Durham was merely reaching into the back seat to remove his hunting rifle when the accident occurred.  *Id.*

Jackson tries to satisfy these causation elements by citation to Burris-Durham's deposition testimony with only a sentence explanation.  (Jackson Resp., ECF No. 38, at 3.)  Specifically, Jackson offers that it is reasonable to "infer" that "the friction between the rifle and the back seat" caused the gun to accidentally fire.  *Id.*  In fact, Burris-Durham posited that "some kind of static electricity or something like that" caused the gun to fire. (Burris-Durham Dep. at 23-24.)  His full testimony is as follows:

> Q:    Was there anything about the vehicle itself that caused the weapon to discharged [sic]?
>
> A:    It did have cloth seats, if that has anything to do with it. It might have caused some kind of static electricity or something like that, because I mean, it was – I was kind of careless.  I should have picked it up, not thinking, because I mean, static electricity probably did have

something to do with it.

(Burris-Durham Dep. at 23-24; see also Burris-Durham Dep. at 31-32.)

This is a guess. It is not appropriate evidence of any kind – of any thing. It would not matter to the undersigned, but Burris-Durham did not even offer testimony that he heard, saw, or felt any static electricity. It is not based on personal knowledge or even some anecdotal experience that such static electricity could make *a gun to fire* inadvertently. The fact that Burris-Durham is generally aware of the phenomenon of static electricity is literally of no moment. (Burris-Durham Dep. at 31-32.) It is a hunch and almost certainly an erroneous one. But, besides being entirely speculative on the actual facts of this case, the opinion is not an opinion suitable for lay testimony. The Court would need some expert evidence that static electricity could fire a weapon. The defendant spends some energy debunking this theory as a matter of obvious physics and engineering. The Court need not go anywhere near so far. There is simply no evidence in the record that it either happened as alleged or that it could ever happen as alleged.

"The focus is on the extent of the role, if any, the vehicle played in causing the injuries or damage, or whether a particular activity is a covered use as required by statute or a policy provision." *Peagler*, 628 S.E.2d at 479. As in *Peagler*, Jackson "has not demonstrated the truck was an active accessory to the injury. The truck was not actively used or involved in causing the injury; it was merely the site of the injury." *Id.* at 481.

Jackson attempts to distinguish *Peagler* from the present case based on differences in the two cases with respect to the temporal proximity of the gun accident to the usage of the vehicle for gun-related activity. Namely, Jackson says that in *Peagler* the guns were removed the day after the hunting trip and, therefore, more remote in time from the hunting purposes for which the vehicle was used than the removal of the gun, in this case, which

came mere moments after they had returned from hunting.

But, *Peagler* did not turn on any such detail. In fact, it readily concluded, in spite of the elapsed time, that the car, as in this present case, was foresseably used for hunting purposes:

> The injury was foreseeably identifiable with the normal use of the pickup truck. Many vehicles in South Carolina, and certainly many pickup trucks, are used for hunting purposes. Using a vehicle to transport firearms to and from hunting grounds is not an abnormal or unanticipated use of a vehicle.

*Id.* The supreme court did not make any distinction about "use" because the hunting trip was more remote in time, indeed, the opposite.

There is no evidence that the vehicle was any accessory to the accident or otherwise caused it, in the way *Peagler* requires.

Having concluded that no causal connection exists, the Court need not consider the whether an act of independent significance broke the causal link between the vehicle and the injury, and whether the vehicle was being used for transportation purposes at the time of the injury. *Id.*

## CONCLUSION

Based on the foregoing, Nationwide's motion for summary judgment (ECF No. 34) is GRANTED. The accident in this case does not "arise out of the ownership, maintenance, or use" of the vehicle.

IT IS SO ORDERED.

s/Bruce Howe Hendricks
United States District Judge

September 17, 2015
Greenville, South Carolina